# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

DEMETRIUS WILLIAMS,

              Petitioner,         :    Case No. 3:21-cv-186

   - vs -                         District Judge Thomas M. Rose
                                     Magistrate Judge Michael R. Merz

CHAE HARRIS, Warden,
 Lebanon Correctional Institution,

                                   :

            Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought by Petitioner Demetrius Williams with the assistance of counsel[1], is before the Court for decision on the merits.  Relevant pleadings are the Petition (ECF Nos. 1, 1-2), the State Court Record (ECF No. 6), the Warden's Return of Writ (ECF No. 7), and Petitioner's Traverse (ECF No. 10).

**Litigation History**

Early in the morning of September 4, 2017, Pierre Jackson and his cousin Rino Lattimore were shot in the parking lot of the Plush Gentlemen's Club in Harrison Township.  On September 15,

---

[1] The Return of Writ identifies the Petition as having been filed *pro se* (ECF No. 7, PageID 1218).  The docket, however, reflects that Williams had been represented by counsel Since the inception of the case.

2017, a Montgomery County Grand Jury indicted Petitioner Demetrius Williams on two counts of Murder (Counts 1, 3), each with three three-year firearm specification; two counts of felonious assault (Counts 2, 5), each with a three-year firearm specification; two counts of felonious assault, each with a serious physical harm specification (Counts 4, 6); and one count of having weapons while under disability (Count 7). (Indictment, State Court Record, ECF No. 6, Exhibit 1).

Several pretrial motions to suppress were withdrawn by defense counsel before being heard and decided.  Counts one through six with the accompanying firearms specifications were tried to a jury which found Williams guilty.  The weapons under disability count was tried to the bench, also resulting in a guilty finding.  After a number of counts were merged at sentencing, Williams was sentenced to an aggregate term of imprisonment of twenty-nine years to life (Termination Entry, State Court Record, ECF No. 6, Ex. 11).

Williams appealed to the Ohio Court of Appeals for the Second District which affirmed the conviction.  *State v. Williams*, 2019-Ohio-4105 (Ohio App. 2nd Dist. Oct. 4, 2019).  The Supreme Court of Ohio allowed Williams to file a delayed appeal, but then declined to exercise jurisdiction. *State v. Williams,* 158 Ohio St.3d 1465 (2020).

On December 23, 2019, Williams filed an application to reopen his appeal pursuant to Ohio App. R. 26(B), accompanied by his own affidavit. (Application for Reopening, State Court Record, ECF No. 6, Exhibits 24, 25).  The Second District denied the Application on the merits (Decision, State Court Record, ECF No. 6, Ex. 27) and the Ohio Supreme Court again declined appellate jurisdiction. *Id.* at Ex. 31.  Williams filed his Petition for Writ of Habeas Corpus in this Court on July 13, 2021.

# Analysis

Williams pleads the following Grounds for Relief:

**Ground One:** Due Process violation when denied the constitutional right to present a defense.

**Supporting Facts:**

1. Petitioner was denied his constitutional right to present a defense, in violation of the Sixth Amendment to the United States Constitution.

2. "The United States Supreme court has long held that an accused's right to establish a defense is a fundamental element of the due process of law". *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed 2d 1019 (1967.)

3. The right to a defense is "in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide whether the truth lies." *Id*. at 19.

4. "The right to testify on one's own behalf at a criminal trial has sources in several provision of the Constitution. It is one of the rights that "are essential to due process of law in a fair adversary process."' *Rock v. Arkansas,* 483 US. 44, 51, 107 S.Ct. 2704, 97 L.Ed 2d 37(1987), quoting *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed 2d 562(1972).

5. In this matter, Mr. Williams averred that he wanted to testify at trial, but was not permitted to do so. Mr. Williams' due process rights were violated when he was denied the right to present a defense.

**Ground Two:** Denial of Effective Assistance of Counsel

Supporting Facts:

6. Mr. Williams incorporates each allegation contained elsewhere in this petition as if fully rewritten herein.

3

7. Mr. Williams was denied the effective assistance of counsel as mandated by the Sixth Amendment to the United States Constitution.

8. Trial counsel was so ineffective that he did not live up to the standard of assistance of counsel as prescribed in the Sixth Amendment to the United States Constitution thereby depriving Mr. Williams of a fair and reliable trial.

9. The sixth Amendment states "[i]n all criminal prosecutions, the accused shall enjoy the Assistance of Counsel for his defen[s]e."

10. The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed 2d 674(1984) has established the process by which courts are to decide ineffective assistance of counsel claims. Under Strickland a defendant must first show that counsel's performance was so inadequate that counsel did not meet the standard set by the Sixth Amendment. *Id*. at 687. Second, a defendant must establish that counsel's inadequate performance deprived the defendant of a fair and reliable trial. *Id*.

11. Trial counsel failed to meet the standard of assistance of counsel as guaranteed by the Sixth Amendment and as described in *Strickland* in that he failed to obtain a crime-scene reconstructionist; failed to investigate the Government's forensic evidence; failed to contact, interview, or call witnesses to testify at trial; failed to allow Mr. Williams to testify in his own defense; and failed to suppress evidence including Mr. Williams' statements and identification. These failures of trial counsel deprived Petitioner of his right to a fair and reliable trial as guaranteed under *Strickland*.

12. All these stated examples show trial counsel's performance was not reasonable as they demonstrate a lack of diligence in preparation, for which there is no reasonable explanation under the circumstances. As a result, Mr. Williams was prejudiced as confidence in the outcome was severely undetermined.

13. Trial counsel failed to thoroughly investigate the forensic evidence in this matter and should have retained an accident reconstructionist. In this matter, no forensic evidence linked Mr. Williams to the murder weapon. In fact, a bullet recovered from another vehicle on scene was not thoroughly investigated by the defense. A reconstructionist could have demonstrated a second shooter.

4

14. Additionally, before the trial, trial counsel filed motions to suppress evidence challenging statements and identification of Mr. Williams. Trial counsel subsequently withdrew all pending motions to suppress prior to trial. Trial counsel was ineffective by withdrawing the motions to suppress and by failing to suppress in-court identification of Mr. Williams.

15. The Supreme Court of the United States holds that an identification derived from unnecessarily suggestive procedures, which have a likelihood of leading to a misidentification, violate a defendant's due process. *Neil v. Bigger[s]*, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).

16. A two-step process should be used to determine the admissibility of identification testimony. First, the court must decide whether the identification was impermissibly suggestive. If the identification was suggestive, the court must determine if the identification was reliable and there was not a substantial likelihood of irreparable misidentification. *Mason [sic] v. Brathwaite,* 432 U.S. 98, 97 S. Ct. 2243; 53 L. Ed. 2d 140 (1977).

17. "It is obviously suggestive to ask a witness to identify a perpetrator in the courtroom when it is clear who is the defendant." *U.S. v. Rogers*, 126 F.3d 655 (5th Cir. 1997). Citing *U.S. v. Archibald,* 734 F.2d 938, 941, 943 (2d Cir. 1984); *U.S. v. Hill*, 967 F.2d 226, 232 (6th Cir. 1992); *U.S. v. Rundell,* 858 F.2d 425, 427 (8th Cir. 1988).

18. There are five factors to be considered in determining the likelihood of misidentification: 1) the opportunity of the witness to observe the criminal at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the witness's prior description; 4) the witness's level of certainty and 5) the time between the crime and the identification. *Biggers* at 199.

19. In this matter, the felonious assault victim identified Mr. Williams as the shooter. However, he admitted he did not see the deceased get shot, and if fact, testified that he thought another individual shot the deceased. No DNA or other forensic evidence tied Mr. Williams to the murder weapon. Identification of Mr. Williams as the perpetrator of the felonious assault tainted subsequent identification of Mr. Williams as the murderer. The identification is impermissibly suggestive resulting in a substantial

5

> likelihood of irreparable misidentification. Trial counsel fell below the *Strickland* Standard by failing to challenge in-court identification of Mr. Williams.
>
> 20. Ultimately, Mr. Williams was denied his Constitutional right to effective assistance of counsel at the trial level due to the detrimental failings of his trial counsel. Because Mr. Williams was denied effective assistance of counsel in clear violation of the Constitution and firmly established Supreme Court precedent, he is entitled to habeas relief.

(Petition, ECF No. 1-2, PageID 20-23).

Petitioner asserts his Petition is timely under the "Holding in *Clay,*" presumably intending *Clay v. United States,* 537 U.S. 522, 532 (2003)(Petition, ECF No. 1, PageID 14). By Respondent's calculation, the Petition was filed on the last day of the limitations period, making it timely. No analysis under *Clay* is needed.

**Generally Applicable Law**

As will be seen below, all of Petitioner's claims are properly analyzed as Sixth Amendment ineffective assistance of counsel claims at either the trial or appellate level[2].

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires

---

[2] Williams was represented by different counsel at trial, on appeal, and in these habeas proceedings.

6

> showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011). The *Strickland* test

applies to appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, such as ineffective assistance of trial counsel or ineffective assistance of appellate counsel, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  The Supreme Court has held this deference is particularly required with ineffective assistance of counsel claims.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674; *Lindh* v. *Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ___, 129 S. Ct. 1411, 173 L. Ed. 2d 251. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S. Ct. 1411, 173 L. Ed. 2d 251. Federal habeas courts must guard  against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011).

**Ground One:  Denial of the Right to Testify (Ineffective Assistance in Advising Not to Testify)**

In his First Ground for Relief, Williams asserts he was prevented from testifying in his own

defense.  On its face, this claim is pleaded as a due process claim that Williams "was prevented"

from presenting a defense. Use of the passive voice – was prevented – suggests Williams is

claiming the State prevented him from presenting a defense.  The leading case he cites, *Washington*

*v. Texas*, 388 U.S. 14 (1967), found Texas had breached this right by denying defendant

compulsory process to obtain testimony from a witness.  This right to present a defense clearly

includes the right to testify in one's own defense[3].  *Rock v. Arkansas*, 483 U.S. 44 (1987).

But these citations are misplaced.  Williams never argues in either the Petition or the

Traverse that the State did anything to prevent him from testifying.  Rather this claim is properly

read as an ineffective assistance of trial counsel claim, to wit, that trial counsel gave poor advice

when he told Williams not to testify.

Respondent asserts this claim is procedurally defaulted because it was presented to the

Ohio courts for the first time in Williams' Application to Reopen his direct appeal (Return, ECF

No. 7, PageID 1223).  In response Williams asserts "t]his claim was raised in Mr. Williams' fourth

assignment of error to the Ohio Second District Court of Appeals on April 26, 2019" (Traverse,

ECF No. 10, PageID 1256)[4].  The Magistrate Judge disagrees.

The Fourth Assignment of Error on direct appeal reads:

---

[3] At common law a criminal defendant was not permitted to testify in his own defense because the temptation to
perjury was thought to be too high.  Sir Walter Raleigh and Sir Thomas More were both executed for high treason
without a chance to testify in their own defense.
[4] Counsel also asserts "[t]his claim was exhausted as his Fourth Proposition of Law in his Memorandum in Support
of Jurisdiction filed with the Ohio Supreme Court on February 9, 2020."  That Proposition of Law repeats verbatim
the Fourth Assignment of Error (Memorandum in Support of Jurisdiction, State Court Record, ECF No. 6, Ex. 21,
PageID 197).

> **FOURTH ASSIGNMENT OF ERROR:** Mr. Williams received ineffective assistance of counsel when counsel failed to properly advise him throughout the course of the proceedings in violation of Mr. Williams' Sixth and Fourteenth Amendment rights under both the United States and Ohio Constitutions

(Appellant's Brief, State Court Record, ECF No. 6, Ex. 14, PageID 79). Thus on its face the Fourth Assignment is a claim of ineffective assistance of trial counsel, not a claim that Williams was somehow prevented from testifying. Examining the content of the ineffective assistance of trial counsel claim, the Court finds Williams asserted his counsel was ineffective "when counsel failed to: provide discovery to Mr. Williams; obtain ballistic expertise and a detective to investigate the case; seek suppression of evidence at trial; and counsel failed to investigate and properly prepare for trial and sentencing." *Id.* at PageID 94. There is no mention of trial counsel somehow preventing Williams from testifying or even advising him not to. In deciding the Fourth Assignment of Error, the Second District did not mention any claim that either the trial court or Williams' attorney somehow "prevented" him from testifying. And of course a defense attorney has neither the power nor the authority to prevent a defendant from testifying.

The Magistrate Judge concludes Williams did not raise on direct appeal either a due process claim that he was prevented from testifying by the trial court or a Sixth Amendment claim that his attorney provided ineffective assistance of trial counsel when he advised him not to testify.

When he filed his Application to Reopen the direct appeal, Williams pleaded as his fourth omitted assignment of error that trial counsel "Failed to inform the Defendant-Appellant of his right to testify and usurping said right to testify." (State Court Record, ECF No. 6, Ex. 24, PageID 251). This reads as an omitted ineffective assistance of trial counsel claim, not a claim that the State prevented Williams from testifying.

This Report foregoes any further analysis of the First Ground for Relief as a due process

10

claim of state interference with presenting a defense claim and proceeds on the theory that

Williams is actually raising a Sixth Amendment ineffective assistance of trial counsel claim, which is the

way the Ohio courts understood the claim.  If Williams actually intends to present a Due Process claim, he

has procedurally defaulted that claim in the most fundamental way – he has never presented it to any Ohio

court in those terms.

The Second District found Williams ineffective assistance of appellate counsel claim, argued as the

fourth omitted assignment of error, had no merit because the underlying ineffective assistance of trial

counsel claim – that trial counsel prevented Williams from testifying -- was not supported by any evidence

in the trial court record and therefore could not have been raised on direct appeal (Decision and Entry, State

Court Record, ECF No. 6, Ex. 27, ¶¶ 17-21, PageID 272-74).  An appellate attorney obviously cannot be

faulted for failing to raise a claim that is not cognizable.

The procedural default doctrine in habeas corpus is described by the Supreme Court as

follows:

> In all cases in which a state prisoner has defaulted his federal claims
> in state court pursuant to an adequate and independent state
> procedural rule, federal habeas review of the claims is barred unless
> the prisoner can demonstrate cause of the default and actual
> prejudice as a result of the alleged violation of federal law; or
> demonstrate that failure to consider the claims will result in a
> fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406

(6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights

claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S.

72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  "Absent cause and prejudice, 'a federal

habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal

habeas corpus review.'"  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v.*

11

*Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). "[A] federal court may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020), citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.

12

. . . .

> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner can overcome a procedural default by showing excusing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Ohio has a relevant procedural rule, to wit, that all claims, including ineffective assistance of trial counsel claims, which can be adjudicated on the appellate record must be presented on direct appeal or be barred by *res judicata*. *State v. Perry,* 10 Ohio St. 2d 175 (1967). Conversely, claims that depend on evidence outside the trial court record must be presented in a petition for post-conviction relief under Ohio Revised Code § 2953.21. As established above, this claim (either as a due process claim or an ineffective assistance of trial counsel claim) was never presented on direct appeal. When Williams did present evidence *dehors* the record on this issue, it was by way of his Affidavit in support of his 26(B) Application (ECF No. 6, Ex. 25).[5]

---

[5] Counsel claims several times that Williams "averred" facts related to this claim. See, e.g. Petition, ECF No. 1-2, ¶ 5, PageID 20. Black defines "averment" as "a positive declaration or affirmation of fact; esp., an assertion or allegation in a pleading." Black's Law Dictionary (7th ed.). So far as the Magistrate Judge is advised, the only averment by

13

The Second District enforced this *res judicata* procedural rule by declining to decide Williams' ineffective assistance of trial counsel claim on the merits (i.e., by refusing to reopen the appeal to permit its presentation). Any attempt by Williams to present that claim in a petition for post-conviction relief would have been barred by the relevant statute of limitations, Ohio Revised Code § 2953.23, which is a jurisdictional bar.[6]

A procedural default can be avoided by showing excusing cause and prejudice. *Murray v. Carrier,* 477 U.S. 478, 494-95 (1986). To this end, Williams claims the benefit of *Martinez v. Ryan*, 566 U.S. 1 (2012), but *Martinez* is of no assistance to him. *Martinez* will excuse procedural default of a substantial ineffective assistance of trial counsel claim if that claim was required to be presented in an initial collateral attack on the judgment and the defendant had no counsel in post-conviction or that counsel was ineffective to the level of a *Strickland* violation. Ohio courts have the authority to appoint counsel in Ohio Revised Code § 2953.21 proceeding for indigent petitioners, but there is no showing Williams is indigent: he was represented by retained counsel at trial, different counsel on appeal, and again by retained counsel in these proceedings. More importantly, Williams has not shown he ever asked for appointed counsel for a petition for post-conviction relief.

The Sixth Circuit has recognized the application of *Martinez* and its extension in *Trevino v. Thaler*, 569 U.S. 413 (2013), to the Ohio system of post-conviction relief, but only with considerable hesitation and limitations. See *White v. Warden, Ross Corr. Inst.*, 940 F.3d 270 (6th Cir. 2019), and *Hugueley v. Mays*, 964 F.3d 489 (6th Cir. 2020).

---

Williams of relevant facts about trial counsel's advice on the right to testify is in the referenced Affidavit.

[6] Any petition under Ohio Revised Code § 2953.21 must be filed within 365 days of the filing of the transcript on appeal which occurred May 21, 2018 (See Transcript, State Court Record, ECF No. 6-2, PageID 354). Williams has filed no Ohio Revised Code § 2953.21 petition at all.

14

One of those limitations, recognized in *Martinez* itself, is that the underlying claim of ineffective assistance of trial counsel must be "substantial."  Williams' ineffective assistance of trial counsel claim is not substantial for the reasons given by the Second District in denying his Application to Reopen:

> ¶ 19 Here, the record reflects that the trial court found Williams guilty of having weapons under disability based on a prior drug conviction that barred him from carrying a firearm (see Verdict Entry Count 7, filed on February 6, 2018); trial counsel succeeded in keeping the jury unaware of Williams' prior conviction by submitting the weapons under disability count to the trial court. Permitting Williams to testify in his own defense would have made the jury aware of the prior conviction and may have subjected him to cross-examination about his prior criminal activity. A trial attorney's advising a defendant not to testify has been found to constitute "sound trial strategy" where that advice prevented the jury, from learning about the defendant's criminal background. See *State v. Strong,* 4th Dist. Lawrence No. 00CA35, 2001 WL 994118, *3 (Aug. 17, 2001). Accordingly, even if Williams' trial attorney strongly discouraged Williams from testifying, that trial strategy would not amount to ineffective assistance of trial counsel.

(Decision and Entry, State Court Record, ECF No. 6, Ex. 27, PageID 273).  The desire to prevent a jury from learning of prior felony convictions is a common premise of defense attorneys in advising a defendant not to take the stand.  Although Williams had an absolute right to reject Williams' advice and take the stand, his Affidavit gives no hint of what he would have testified to or why defense counsel Bennett's advice was bad advice.  A mere claim that Williams wanted to take the stand does not show ineffective assistance of trial counsel in advising him not to.  Unless Williams had some exonerating testimony to give – testimony he did not share with the Ohio courts – he has not shown any prejudice from counsel's supposedly bad advice.

Williams also attempts to avoid procedural default by relying on the miscarriage of justice exception (Traverse, ECF No. 10, PageID 1259).  However, that exception requires a petitioner to

present reliable new evidence not presented to the jury that he is actually (i.e. factually) innocent.

In *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005), the Sixth Circuit held:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo,* 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005). Williams has presented no new evidence of actual innocence at all.

Accordingly, the Magistrate Judge concludes Williams has procedurally defaulted his First Ground for Relief and has not presented persuasive excusing cause and prejudice. The First Ground should be dismissed with prejudice on that basis.

In the alternative, if the Court should reach the merits of the First Ground for Relief, it should be dismissed as without merit for the reasons given by the Second District: in the absence of proof to the contrary, it is not ineffective assistance of trial counsel to advise a defendant charged with murder not to take the stand and have to admit a prior felony drug conviction to a jury.

16

**Ground Two:   Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Williams asserts he received ineffective assistance of trial counsel when his trial attorney (1) failed to obtain a crime-scene reconstructionist; (2) failed to investigate the Government's forensic evidence; (3) failed to contact, interview, or call witnesses to testify at trial; (4) failed to allow Mr. Williams to testify in his own defense; and (5) failed to suppress evidence including Mr. Williams' statements and identification.

On direct appeal and as noted above, Williams presented a claim of ineffective assistance of trial counsel as follows:

> **FOURTH ASSIGNMENT OF ERROR:** Mr. Williams received ineffective assistance of counsel when counsel failed to properly advise him throughout the course of the proceedings in violation of Mr. Williams' Sixth and Fourteenth Amendment rights under both the United States and Ohio Constitutions

(Appellant's Brief, State Court Record, ECF No. 6, Ex. 14, PageID 79.)  In the body of the Brief, Williams particularized this assignment by asserting counsel was ineffective "when counsel failed to: [1] provide discovery to Mr. Williams; [2] obtain ballistic expertise and a detective to investigate the case; [3] seek suppression of evidence at trial; and counsel [4] failed to investigate and properly prepare for trial and sentencing." *Id.* at PageID 94.   As can be readily seen the five sub-claims of ineffective assistance of trial counsel Williams makes in his Petition are not the same as the sub-claims he made on direct appeal.

No court can competently and fairly adjudicate a claim that is not fairly presented to it.  For that reason, a habeas petitioner forfeits any federal constitutional claims he or she has not fairly presented to the state courts.  To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis

17

of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

Claims of ineffective assistance of trial counsel are particularly susceptible to this problem. Every habeas petitioner has lost his or her case in the state trial and appellate courts. After losing, it is easy to conjecture things the defense counsel could have done differently and to suppose they would have made a difference. But to prevail on a claim of ineffective assistance of trial counsel a defendant must complain to the courts about what particular things the trial attorney did or did not do that constituted prejudicial deficient performance.

A pleading that merely says to a court "I was denied due process and a fair trial" does not fairly present a claim. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe,* 735 F.2d 684, 688-89 (2nd Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

Similarly, merely saying "My lawyer did a bad job" does not suffice, even when dressed up in the Sixth Amendment language of ineffective assistance of counsel. If a petitioner's claims in federal habeas rest on different theories than those presented to the state courts, e.g., different

ways in which defense counsel did not perform competently, they are procedurally defaulted. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001)("relatedness" of a claim will not save it).

In this case Williams did not present the ineffective assistance of trial counsel claims in his Petition on direct appeal.  Instead, he presented those claims as underlying his ineffective assistance of appellate counsel claim when he filed his Application to Reopen.  In denying his Application, the Second District applied against him Ohio's criminal *res judicata* doctrine announced in *State v. Perry, supra*:

> ¶ 10 Where the issue of trial counsel's ineffective assistance was reviewed on direct appeal and found to be without merit, further instances of trial counsel's alleged ineffectiveness raised in support of the appellant's application for reopening his appeal are res judicata and cannot support a claim for ineffective assistance of appellate counsel.  See *State v. Mullins*, 76 Ohio St.3d 129, 666 N.E.2d 1117 (1996).

(Decision and Entry, State Court Record, ECF No. 6, Ex. 27, PageID 268).  The *Perry* doctrine has been repeatedly upheld by the Sixth Circuit as an adequate and independent state ground of decision.  *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

The Second District also rejected on the merits of the 26(B) Application those underlying claims of ineffective assistance of trial counsel which could be distinguished from the claims raised on direct appeal:

19

¶ 14. Further, even to the extent that Williams's current allegations may be distinguishable from his prior ineffective assistance of counsel claims, those allegations still fall short of demonstrating that Williams's trial attorney provided ineffective assistance. Williams has filed his own affidavit in order to comply with App.R. 26(8)(2)(d)'s requirement of a sworn statement. However, he has offered no cognizable evidence to corroborate his affidavit's assertion that an independent eyewitness who testified at trial "could not have heard the gunshots and s[een] the victim fall to the ground" as that witness claimed. (Affidavit of Demetrius Williams ("Williams Affid."), ¶ 6). Further, Williams has presented no evidence to substantiate his assertions that a bullet recovered from the hood of a car at the shooting scene and the testimony of two other eyewitnesses could have proven "that someone else was shooting." *(Id.,* ¶ 4).

(Decision and Entry, State Court Record, ECF No. 6, Ex. 27, PageID 270-71).

In his Traverse, Williams presents additional claims of ineffective assistance of trial counsel:

The failure of trial counsel to suppress the multitude of pictures from the crime scene and the autopsy were extremely prejudicial to Mr. Williams' case and sought only to enflame the jury. Furthermore, the failure of trial counsel to suppress Mr. Williams' statements detrimentally affected the outcome of his case. Mr. Williams was incapable of waiving his *Miranda* Rights due to his mental capacity at the time of the questioning.

(Traverse, ECF No. 10, PageID 1263). The gruesome pictures claim was raised on direct appeal as a trial court error rather than ineffective assistance of trial counsel as the First Assignment of Error and decided on the merits. *State v. Williams, supra*, ¶ 28. The Court of Appeals explicitly recognized trial counsel moved to exclude these photographs. *Id.* at ¶ 35. Because the photographs would not have been excluded if counsel persisted in the motion to exclude, it does not constitute ineffective assistance of trial counsel to fail to persist.

Regarding **pre-trial** identification, counsel filed and then withdrew motions to suppress.

20

The Second District held this was not ineffective assistance of trial counsel:

> ¶ 44 With respect to efforts to suppress evidence, Williams again does not identify what evidence he believes his attorney should have tried to exclude but did not. As discussed above, defense counsel did attempt, albeit unsuccessfully, to prevent the admission of certain photographs of Jackson's body. Although Williams's trial attorney voluntarily withdrew other motions to suppress, the record confirms that challenging Williams's identification was not a viable defense in this case, where Williams was well known to the surviving shooting victim (Lattimore) and at least one other eyewitness (Vaughn), both of whom identified him as the shooter. His trial attorney also reasonably assessed the statements Williams made during his police interview to be not significantly probative of guilt. Williams has not demonstrated that the outcome of his trial would have been changed by further efforts to exclude evidence presented by the State.

*State v. Williams, supra.*

In the Petition, Williams also claims his trial attorney should have moved to suppress the **in-court** identification made during trial (ECF No. 1-2, PageID 22). He argues

> 17) "It is obviously suggestive to ask a witness to identify a perpetrator in the courtroom when it is clear who is the defendant." *U.S. v. Rogers*, 126 F.3d 655 (5th Cir. 1997). Citing *U.S. v. Archibald*, 734 F.2d 938, 941, 943 (2d Cir. 1984); *U.S. v. Hill*, 967 F.2d 226, 232 (6th Cir. 1992); *U.S. v Rundell*, 858 F.2d 425, 427 (8th Cir. 1988).

*Id.* The testimony of Rino Lattimore, the surviving victim, begins at Trial Transcript ECF No. 6-3, PageID 695. Lattimore testifies that he has known Williams all his life. *Id.* They were best friends prior to this incident. *Id.* Prior to this incident, he saw Williams every day. *Id.* He then pointed Williams out in the courtroom. *Id.* at PageID 696. The trial court noted for the record that Lattimore had identified Williams and defense counsel made no objection. *Id.*

The record does not reflect where Petitioner was seated at the time but appears to indicate he was not wearing distinctive jail clothing; he had a constitutional right not to appear before the

21

jury in such clothing, and the Court assumes Judge Skelton, himself a successful defense attorney for many years before becoming a judge, would have been particularly sensitive on this point.  The Magistrate Judge also assumes, although no proof is offered, that Petitioner was seated at a table with his attorney rather than in the well of the courtroom, since this is so customary an arrangement at trial in Ohio.

In *United States v. Hill*, 967 F.2d 226 (6th Cir. 1992), relied on by Williams, the Sixth Circuit held that the analysis in *Neil v. Biggers,* 409 U.S. 188 (1972), which applies to pre-trial identifications also applies to in-court identifications.  967 F. 2d at 232.  Judge Boggs noted the observation of the *Rundell* court "that the eyewitnesses' inherent knowledge that the person seated at counsel table was the defendant made the in-court identification impermissibly suggestive". *Id.* Nonetheless the Sixth Circuit allowed the in-court identification in *Hill*, apply the reliability prong of the *Biggers* analysis, even though it had been five years since the crime.

In *Biggers* the Supreme Court held:

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

409 U.S. at 199; *accord, Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).   The Magistrate Judge accepts the premise that having an in-court identification made of a person seated as defendants usually are in American criminal trials is inherently suggestive.  But applying the *Biggers* reliability factors, the Court finds no violation of Williams' due process rights by Lattimore's in-court identification.  There is no evidence to contradict Lattimore's testimony that he and Williams were best friends until this incident, that they had grown up together, and saw each other every

day. It is difficult to imagine a more reliable identification. Certainly the in-court identification in *Hill*, which occurred five years after the crime and made by someone to whom the defendant was a stranger, scored lower on the reliability tests. Because a motion to suppress the in-court identification here would certainly have failed, defense counsel did not perform deficiently in failing to object.

In each instance when it was presented with an ineffective assistance of trial counsel or ineffective assistance of appellate counsel claim, the Second District Court of Appeals applied the proper standard from *Strickland*. In each instance its application was objectively reasonable.

## Conclusion

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

January 18, 2022.

s/ Michael R. Merz
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.